In the Matter of the Estate of JAMES A. WALSH, Deceased.

Surrogate's Court, Kings County, April 20, 1933.

*Foley & Martin* [*Patrick J. Dobson* and *Maurice A. Krisel* of counsel], for the petitioner.

*John C. von Glahn*, for the respondent Adelaide von Glahn Walsh, widow.

WINGATE, S. So far as the decided cases in this State disclose, the question at bar is one of first impression. On May 19, 1932, the testator executed a rather elaborate and carefully drawn will, by the terms of which substantially his entire estate was erected into a number of trusts.

The " seventh " item read: " I nominate and appoint William J. Martin to be the sole executor of this my last will and testament and trustee of the trusts herein created and request and direct that he shall not be required to give a bond or other security for the performance of any duties under this Will."

In other items extremely broad powers were given to the executor and trustee. The " seventeenth " item read as follows: " I authorize and empower my Executor herein named at any time by an instrument in writing under his hand and seal and acknowledged or proved so as to entitle the same to be recorded as a deed of real property, to appoint a successor executor and/or trustee of any or all of the trusts created by this Will, and every executor and/or trustee thus appointed shall, by virtue of such appointment have and possess like right, powers and discretion and duties as if named as an executor and/or trustee in and by this Will."

The testator died on the twenty-third of February of this year. At that time the executor named in the will was extremely ill and was sojourning at Palm Beach, Fla. On March third he duly executed a petition for the probate and the other necessary papers for his qualification as executor, and simultaneously executed and acknowledged, in due form, an instrument reading as follows: " Know all men by these presents. That I, William J. Martin, the Executor and Trustee named in the Will of James A. Walsh executed the 19th day of May, one thousand nine hundred and thirty-two, pursuant to the provisions of Paragraph 17th of the said Will, hereby appoint James A. Martin, of 64 Wall Street, New York City, the Executor of and Trustee under the trusts created by, the said Will."

These papers were all duly filed in this court on the 8th day of March, 1933, and on the following day, March ninth, prior to

four P. M., the will was admitted to probate and letters executory were issued to William J. Martin, the executor named therein. On the evening of the same day, at about ten-thirty P. M., he died.

Application has been made to this court for the issuance of letters testamentary to James A. Martin, the successor executor and trustee named by the deceased executor in the designation executed on March third, and pursuant to a direction of the court an order has been issued and returned directing the beneficiaries named in the will to show cause why such letters should not be issued. On the return the widow has interposed objections to the grant of such letters to the nominee.

The basis of the objections is to the general effect that William J. Martin, the executor named in the will, did not become such until the issuance of letters testamentary to him by this court on March ninth; that the power granted him by the terms of the will in item " seventeenth," to name a successor, did not become effective until the time of such issuance, and that, consequently, his action on March third, in designating James A. Martin as a successor executor, was premature and nugatory.

In the opinion of the court such contention attempts to stress the letter, at the sacrifice of the spirit, of the testamentary document. It is one of the most primary basic principles of probate law and practice that the function of the court is to effectuate the intention of the testator in so far as this is discernible from the terms of his will and is not in contravention of any positive rule of law. Innumerable citations to this effect might be supplied, but it will be sufficient to call attention to the language of the Court of Appeals in *Hartnett* v. *Wandell* (60 N. Y. 346, at p. 349): " The power of a testator over his estate, the care and management as well as the ultimate disposition and distribution of it, is unqualified and absolute, save only as restricted and limited by statute. The principal limitations have respect to the statutes of uses and trusts, and the law against perpetuities and unauthorized accumulations. Within the limits and for the time allowed by law, a testator may commit the administration of his estate and the care of his property to such individuals or succession of individuals, selected by himself or to be designated by others, as he pleases. As he can dispose of the whole estate he may dispose of the naked custody and the management of it for a limited period; and the disposal, whether for a temporary purpose or otherwise, may be, except as prohibited by statute, absolute or provisional, and conditional, or as others designated by him may from time to time direct."

Even a casual reading of the terms of the present will demon-

strates that the testator reposed in William J. Martin the greatest possible trust and confidence, and desired to place the administration of his affairs, subsequent to his death, in his hands, and that rather than leave such administration to some person designated by law, when his named executor could no longer personally attend to it, he preferred to commit the selection of a successor to the judgment of his nominated representative, reposing in him, in this respect, the same confidence which the entire tenor of the will demonstrated that he otherwise possessed.

The power of choice of such successor was confided as a result of this peculiar confidence in the man as an individual, and not by reason of his legal qualification for the particular office of executor. Assuredly it would not be maintained that the desire of the testator would have met with compliance in this regard had some other individual than William J. Martin qualified by chance as substituted fiduciary and then attempted to exercise the discretionary confidence granted by the " seventeenth " item of the will. (Cf. *Matter of White*, 135 Misc. 377.) It was the wish of the testator that his trusted friend, William J. Martin, and he alone, should name the person who should administer his estate when the latter could no longer attend to the matter himself.

Quite aside from this consideration, it is primary that from the moment of the death of the testator, William J. Martin became the executor of the will, irrespective of its actual admission to probate and the grant of letters testamentary to him. (*Hartnett* v. *Wandell, supra; Matter of Rath*, 107 Misc. 598, 599; *Matter of Brocato*, 143 id. 664, 665.)

In the first cited case the Court of Appeals says in part as follows (at p. 349): " But the authority of the executors is derived from the will and not from the letters testamentary issued by the surrogate. The latter are but the authentic evidences of the power conferred by the will, and are founded upon the probate of that instrument. It is true that by the statutes of this State, executors are not permitted to exercise their powers except to a very limited extent, until proof of the will and the granting of letters testamentary. (2 R. S. 71, § 16.) But this does not affect the character of the office or detract from the efficacy of the will as the source of the power. An executor derives power from the will, but an administrator owes his to the appointment of the surrogate. (Lovelass on Wills, 382 *et seq.*) An executor can derive his office from a testamentary appointment only. (1 Williams on Executors, 209, and note [a].) The appointment may be either express or constructive; and it may be an immediate designation, or an appointment by others by authority of the will. * * * The proposition

is abundantly sustained by authority. The rule grows out of the fundamental principle universally recognized, that effect shall be given to the will of a testator when not contrary to the rules of law, as such will, and the intent of the author of it can be gathered from the whole instrument."

That the testamentary intent respecting the person who is to administer the estate of the decedent is to be as carefully followed as any other portion of his testamentary directions has been repeatedly determined. In *Matter of Bergdorf* (206 N. Y. 309, 312) the court says: " The intent of a testator as to how, when and by whom his estate shall be conserved, paid out and distributed will be, if needs be, strenuously searched for in the testamentary language and, when ascertained, will be carried out in so far as it is not inimical to law."

*Hartnett* v. *Wandell (supra)* contributes the following (at p. 351): " The courts have gone great lengths in giving effect to wills, designating or authorizing the designation of executors. * * * These and numerous other cases that might be cited are only referred to as showing the great liberality which the courts have exercised in committing the execution of wills to those indicated in any manner by the will and in accordance with the intent of the testator, and so as not to disappoint his wishes, regardless of technicalities. The practice of the courts has been accommodated to the will, rather than the will made to give way to technical forms and modes of procedure."

Further applications of this principle may be found in *Baker* v. *Baker* (18 App. Div. 189, 191); *Matter of Walsh* (144 N. Y. Supp. 442, 443, not officially reported), and numerous other cases.

By the instrument executed on March third, William J. Martin exercised in the precise manner prescribed in the will and by law, the delegated power to name a successor. (Real Prop. Law, § 137.) He was the executor by the tenor of the will and his acts for the benefit of the estate, even though they had transcended the express authority of section 223 of the Surrogate's Court Act, would inevitably be confirmed by relation upon the subsequent probate of the instrument and the issuance of letters to him. (*Matter of McCafferty*, 147 Misc. 179, and cases cited.) Therefore, even if the designation prior to the actual qualification were to be considered by any one as transcending the powers then possessed by him, nevertheless it would, in all respects, be validated by the subsequent issuance of his letters.

The dictum in *Hartnett* v. *Wandell (supra)*, upon which sole reliance is placed by the respondent, raising the question as to whether the exercise of the power granted by the will in that case

to appoint a co-executor, would have been valid if the act had been performed prior to the qualification of the executrix named, has no application whatsoever on the facts in the case at bar. The authority there given was to appoint a *co*-fiduciary. The obvious connotation of this grant of power was to name a person as fiduciary to act with one already qualified. It would seem that such an appointment could not be made until the qualification of the original fiduciary with whom such joint action was to take place. In the case at bar the situation is entirely different and contemplated the appointment of an executor and trustee whose functions and duties would be the execution of the directions of the testator in so far as they might be left uncompleted by the fiduciary named in the will.

For the reasons stated, the objections are overruled and letters testamentary will be issued to James A. Martin.

Proceed accordingly.